ZUCKERMAN SPAEDER LLP
D. BRIAN HUFFORD (*pro hac vice forthcoming*)
*dbhufford@zuckerman.com*
JASON S. COWART (*pro hac vice forthcoming*)
*jcowart@zuckerman.com*
1185 Avenue of the Americas
31st Floor
New York, NY  10036
212.704.9600
212.704.4256 (fax)

GRODSKY & OLECKI LLP
MICHAEL J. OLECKI (SBN 133629)
*michael@grodsky-olecki.com*
TIM B. HENDERSON (SBN 281159)
*tim@grodsky-olecki.com*
2001 Wilshire Blvd., Ste. 210
Santa Monica, California 90403
310.315.3009
310. 315.1557 (fax)

Attorneys for Plaintiffs
Ralph Mayer, Jr., M.D., Lutz Surgical
Partners PLLC, and NYC Corrective
Chiropractic Care P.C., and the
Putative Class

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH MAYER, JR., M.D., LUTZ SURGICAL PARTNERS PLLC, and NYC CORRECTIVE CHIROPRACTIC CARE P.C., on their own behalf and on behalf of all others similarly situated, | Case No. 2:14-cv-08266 |
| Plaintiffs, | **COMPLAINT FOR BENEFITS DUE AND INJUNCTIVE AND DECLARATORY RELIEF UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., CLASS ACTION** |
| v. | |
| AETNA INC. and AETNA LIFE INSURANCE COMPANY, | |
| Defendants. | |

Plaintiffs Ralph Mayer, Jr., M.D. ("Mayer"), Lutz Surgical Partners PLLC ("Lutz"), and NYC Corrective Chiropractic Care P.C. ("NYC Chiro") (collectively, "Plaintiffs"), based upon personal knowledge as to themselves and their own acts, and information and belief as to all other matters formed after an inquiry reasonable under the circumstances, assert the following in support of their claims against Defendants Aetna Inc. and Aetna Life Insurance Company:

## **INTRODUCTION**

1.      Aetna Inc. and its group of subsidiary companies, including its wholly-owned subsidiary, Defendant Aetna Life Insurance Company (collectively referred to herein as "Aetna") is in the business of insuring and administering health insurance plans, most of which are employer-sponsored and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. ("Aetna Plans").

2.      Under the terms of all Aetna Plans, Aetna is obligated to make benefit payments from its own assets (in the case of fully-insured Aetna Plans) or the assets of the plan itself (in the case of self-insured Aetna Plans) when someone insured by one of those plans (an "Aetna Insured") obtains health care treatment that is covered by the terms of that plan (a "Covered Service"). With respect to all Aetna Plans, Aetna serves as the claims administrator, responsible for determining whether any claim is covered by any particular Aetna Plan and effectuating any resulting benefit payment. As such,

Aetna is an ERISA fiduciary with respect to all Aetna Plans, including the plans that insure the Aetna Insured patients of Plaintiffs, each of whom are health care providers.

3.     Plaintiffs bring this class action to redress Aetna's repeated violations of ERISA resulting from its systematic failure to make benefit payments that are due and owing to participants and beneficiaries under the terms of the Aetna Plans.

4.     Plaintiffs are health care providers that regularly treat Aetna Insureds on an out-of-network basis, meaning that Plaintiffs have no direct contractual relationship with Aetna or any Aetna Plan. Pursuant to Plaintiffs' contractual agreements with their Aetna Insured patients, and the terms of the Aetna Plans, Plaintiffs' patients are responsible for paying the difference between the amount out-of-network providers such as Plaintiffs charge for providing Covered Services and the amount that their Aetna Plan pays Plaintiffs for such services.

5.     Against this backdrop, Aetna has wrongfully refused to cause the Aetna Plans that it administers to pay health care benefits owed to a number of Plaintiffs' patients, even though Aetna openly acknowledges that benefits were due and owing by those plans for Covered Services that Plaintiffs provided. Instead, Aetna has unilaterally withheld payment on these uncontroverted claims, without obtaining the permission of Plaintiffs or those patients, in order to satisfy a prior and disputed debt that Aetna believes that Plaintiffs may owe to *different* Aetna Plans. This prior and disputed debt relates to benefits that these *different* Aetna plans allegedly paid

Plaintiffs in the past for *different* services Plaintiffs provided to *different* patients.

6.     These unilateral "offsets" reflect Aetna's enterprise-level policy with respect to recovery of any payment it believes – without validation by any court or other independent third party – was overpaid by any Aetna Plan. These offsets violate the terms of the Aetna Plans, and Aetna's application of this policy violates ERISA as well as Aetna's fiduciary duties as a claims administrator. There is no provision in any Aetna Plan that permits Aetna to withhold benefit payments owed by one Aetna Plan to a medical provider for Covered Services rendered to one of the plan's insureds simply because Aetna unilaterally alleges that the insured's provider may owe a debt to a different Aetna Plan with respect to benefits previously paid by that plan for services rendered by the provider to a different Aetna Insured.

## **THE PARTIES**

7.     Plaintiff Ralph Mayer, Jr., M.D., is a surgeon who maintains a practice in Los Angeles, California. He does not have a direct contractual relationship with Aetna, but regularly provides treatment to Aetna Insureds on an out-of-network basis.

8.     Plaintiff Lutz Surgical Partners PLLC is a health care provider group which maintains a practice in Lutz, Florida. It does not have a direct contractual relationship with Aetna, but regularly provides treatment to Aetna Insureds on an out-of-network basis.

9.     Plaintiff NYC Corrective Chiropractic Care P.C. is a health care provider

company based in New York, New York, through which Dr. Ali D. Morse, D.C. provides health care services to her patients. It does not have a direct contractual relationship with Aetna, but regularly provides treatment to Aetna Insureds on an out-of-network basis.

10.    Defendant Aetna Inc. is a Pennsylvania corporation with its primary headquarters in Hartford, Connecticut. It, along with Defendant Aetna Life Insurance Company, issues, administers, and makes benefit determinations related to ERISA health care plans around the country, including in this District.

11.    Defendant Aetna Life Insurance Company is a Connecticut corporation with its primary headquarters in Hartford, Connecticut. It, along with Defendant Aetna Inc., issues, administers, and makes benefit determinations related to ERISA health care plans around the country, including in this District.

## JURISDICTION AND VENUE

12.    Plaintiffs assert subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e) (ERISA).

13.    Venue is appropriate in this District, and this Court has personal jurisdiction over Aetna, because Aetna regularly conducts business in this District and the misconduct alleged herein relates, in part, to medical services provided in this District to a patient that resides in this District.

# FACTUAL ALLEGATIONS

14.   The vast majority of Aetna Insureds are covered by employee welfare benefit plans sponsored by private-sector employers. Such plans are governed by ERISA. All offsets challenged herein relate to Aetna Plans governed by ERISA.

15.   Aetna Insureds are either treated by "in-network" ("INET") or "out-of-network" ("ONET") providers. An INET provider is a provider who has entered into a contractual agreement with Aetna and has agreed to accept discounted rates as payment in full for providing Covered Services to Aetna Insureds. Aetna's INET provider agreements also sometimes purport to authorize Aetna to withhold payments otherwise due to an INET provider if Aetna concludes that the provider was overpaid on a prior claim. This case does not concern INET providers.

16.   An ONET provider has not entered into a contractual agreement with Aetna and is free to bill its patients whatever amounts the provider deems appropriate. Pursuant to their terms, Aetna Plans allow Aetna Insureds to receive Covered Services from ONET providers and each plan specifies the portion (if any) of the ONET providers' charges that the plan will pay. Aetna Plans uniformly provide that this payment constitutes a "benefit," and that the patient remains liable to their ONET provider for the difference between whatever amount the Aetna Plan pays and the provider's charges.

17.   There is no provision in any Aetna Plan that allows the plan or its claims administrator to satisfy the plan's obligation to "pay" benefits for Covered Services provided by an ONET provider by "reallocating" such funds to a different Aetna Plan in order to "recoup" or "offset" an alleged prior overpayment made by that different Aetna Plan for services rendered to a different Aetna Insured.

18.   Plaintiffs are ONET providers that routinely treat Aetna Insureds. As ONET providers, Plaintiffs have no contract with Aetna and have not entered into an Aetna INET provider agreement. Plaintiffs have not agreed, in writing or otherwise, that Aetna may withhold payments otherwise owed by one Aetna Plan in order to recover alleged prior overpayments made by another Aetna Plan for a different Aetna Insured, as it has done here. Moreover, Plaintiffs' patients have entered into agreements with Plaintiffs pursuant to which those patients agree that they are liable to Plaintiffs for any amounts billed by Plaintiffs that their Aetna Plan fails to pay, consistent with the terms of the Aetna Plans themselves.

19.   Aetna has consistently treated Plaintiffs as having obtained the right to the insurance benefits of their Aetna Insured patients. Aetna has never objected to Plaintiffs submitting claims directly to it seeking benefits for Covered Services rendered by Plaintiffs to their Aetna Insured patients. It has not insisted that such claims be submitted by Plaintiffs' patients. Aetna allows Plaintiffs to submit electronically all claims for services rendered to Aetna Insureds to a single

clearinghouse for benefit adjudication, regardless of which particular Aetna Plan insures the patient. When Aetna has questions about the medical services provided or their medical necessity, Aetna routinely contacts Plaintiffs to resolve these questions and not their patients.

20.     Aetna also causes Aetna Plans to pay Plaintiffs directly – and not Plaintiffs' Aetna Insured patients – when Aetna determines that Plaintiffs provided a Covered Service to Aetna Insureds. It does so by sending Plaintiffs a check (drawn from the assets of such Aetna Plan) along with a Provider Explanation of Benefits ("PEOB").

21.     The PEOB explains Aetna's decision for each claim submitted (*i.e.*, whether the claim was approved or denied) and the value of the corresponding covered benefit (which ordinarily corresponds to the value of the check made out to Plaintiffs). At the same time, Aetna sends Plaintiffs' Aetna Insured patient a corresponding Explanation of Benefits ("EOB"), which similarly discloses how the claim was resolved and the value of the corresponding benefit that was paid to Plaintiffs for providing Covered Services.

22.     Moreover, when a dispute arises over whether Aetna made an overpayment, Aetna does not treat the Aetna Insured as being involved in the dispute, notwithstanding the fact that the benefit was paid to the provider solely because of the obligation Aetna owed under the terms of the Aetna Plan and that the Aetna Insured

owes the ONET provider for any unpaid portion of the bill. Instead, Aetna deals directly with Plaintiffs as the parties to whom the benefit payment is owed.

23.    Aetna's recognition that Plaintiffs are entitled to insurance benefit payments serves the interests of both Aetna Insureds and Aetna. It allows an Aetna Insured to avoid having to pay an ONET provider out-of-pocket for the full cost of treatment and await reimbursement from Aetna. It allows Aetna to efficiently effectuate benefit payments owed by Aetna Plans by paying the entity which provided, and is ultimately owed the money for providing, the Covered Service.

24.    In each of the offset claims at issue in this litigation, Aetna processed the claim submitted by Plaintiffs under the terms of the applicable Aetna Plan, determined that benefits were owed under such plan, and calculated the amount of such benefits that should be paid pursuant to that plan. Despite Aetna's resulting obligation to cause the Aetna Plans to make such benefit payments, however, Aetna did not cause the Aetna Plans to pay such benefits. Instead, Aetna is engaged in an enterprise-level scheme whereby it illegally withheld such payments. It did so in order to offset what it believes to be prior overpayments to Plaintiffs made by different Aetna Plans relating to services provided to different Aetna Insureds. It has done so without any legal authority under the Aetna Plans or otherwise, and leaves the Aetna Insureds financially responsible for unpaid bills for Covered Services that their respective Aetna Plans are obligated to pay.

**Dr. Mayer**

25. On December 27, 2013, Dr. Mayer performed surgery on an Aetna Insured, referred to herein as Patient A,[1] who was insured under an Aetna Plan sponsored by the Bank of America Corporation ("BOA") and governed by ERISA.

26. Prior to the surgery, Patient A signed a form (the "Authorized Representative Designation") that is a standard form Dr. Mayer has all of his Aetna Insured patients sign. This form is addressed to Aetna and states as follows:

> In considering the amount of medical expenses to be incurred, I, the undersigned, have insurance and/or employee health care benefits coverage with the above captioned [Aetna], and hereby assign and convey directly to the above named healthcare provider(s) **as my designated Authorized Representative(s)**, all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services rendered from such provider(s), regardless of such provider's managed care network participation status. I understand that I am financially responsible for all charges regardless of any applicable insurance or benefit payments. **I hereby authorize the above named provider(s) to release all medical information necessary to process my claims under**

---

[1] The names of the patients referenced in the body of this complaint have been substituted with aliases (Patient A, Patient B, etc.) to protect those patients' privacy interests. For the same reason, identifying information related to the patients identified in all of the PEOBs attached to this complaint has been redacted.

**HIPPAA.** I hereby authorize any plan administrator or fiduciary, insurer and my attorney to release such provider(s) any and all plan documents, insurance policy and/or settlement information upon written request from such provider(s) in order to claim such medical benefits, reimbursement or any applicable remedies. I authorize the use of this signature on all my insurance and/or employee benefit claims submissions.

I hereby convey to the above named provider(s), to the full extent permissible under law and under any applicable employee benefit group health plan(s), insurance policies or liability claim, any claim, chose in action, or other right I may have to such group health plans, health insurance issuers or tortfeasor insurer(s) under any applicable insurance policies, employee benefit plan(s) or public policies with respect to medical expenses incurred as a result of the medical services I received from the above named provider(s), and to applicable remedies, including, but are not limited to, (1) obtaining information about the claim to the same extent as the assignor; (2) submitting evidence; (3) making statements about facts or law; (4) making any request, or giving, or receiving any notice about appeal proceedings; and (5) any administrative and judicial actions by such provider(s) to pursue such claim, chose in action or right against any such liable party or employee group health

plan(s), including, if necessary, bring suit by such provider(s) against any such liable party or employee group health plan in my name with derivative standing, but at such provider(s) expenses. Unless revoked, this assignment is valid for all administrative and judicial reviews under PPACA, ERISA, Medicare and applicable federal or state laws. A photocopy of this assignment is to be considered as valid as the original. I have read and fully understand this agreement. [underlining in original]

27.   Upon successful completion of the surgery, Dr. Mayer submitted an insurance claim to Aetna, billing a total of $24,600.00. In that claim, Dr. Mayer informed Aetna that he had an assignment from Patient A and directed that all benefits due under the BOA Aetna Plan be paid directly to Dr. Mayer.

28.   On or about February 5, 2014, Aetna sent to Dr. Mayer a PEOB (the "February 5, 2014 PEOB") which described how it had processed the claim he had submitted on behalf of Patient A. The February 5, 2014 PEOB was addressed from an Aetna location in Lexington, Kentucky. A copy of the February 5, 2014 PEOB is attached hereto as Exhibit A.

29.   The February 5, 2014 PEOB stated that a total of $15,754.50 was "not payable" under the BOA Aetna Plan because it was in excess of usual and customary rates (the methodology Aetna applied for determining ONET reimbursement levels). Aetna then stated that this non-covered amount was the "patient['s] responsibility."

30.   The February 5, 2014 PEOB went on to explain that $8,845.50, representing the benefits due and owing under the BOA Aetna Plan, was the "Payable Amount" and "Issued Amount." The February 5, 2014 PEOB summarized Aetna's adjudication of the claim as follows:

Total Patient Responsibility:        $15,754.50

Claim Payment:                               $8,845.50

31.   This same information was also sent by Aetna to Patient A in an EOB, a form Aetna is required to provide to its insureds under ERISA when it has processed a claim. Thus, Patient A was informed that a "payment" of $8,845.50 had been "issued" in response to the claim submitted by Dr. Mayer.

32.   In fact, however, $2,662.71 of this benefit was never issued or paid. Instead, the February 5, 2014 PEOB – but not the EOB submitted to Patient A – included a separate section which stated:

Recovered From This Payment:        $2,662.71

Total Payment to Ralph Mayer Jr. MD:    $6,182.79

33.   In explaining why only $6,182.79 was actually being paid and that the remaining $2,662.71 that was owed was being "recovered," the February 5, 2014 PEOB explained that Dr. Mayer had allegedly been overpaid on a different claim for services rendered to a different patient (herein identified as Patient B) insured by a different Aetna plan, and that this overpayment was being "recovered" from this new

claim. According to the February 5, 2014 PEOB, "[t]his overpayment deduction is the result of a correction to a previously processed claim."

34.   Patient B was insured under an Aetna Plan issued on behalf of United Parcel Service of America, Inc. ("UPS"). Dr. Mayer treated Patient B on December 3, 2012. After Aetna processed the claim Dr. Mayer submitted on behalf of Patient B, it paid Dr. Mayer $3,937.70. At some point thereafter, Aetna determined that the UPS Plan had overpaid Dr. Mayer by the amount it subsequently recovered from the BOA Plan on behalf of Patient A, as reflected in the February 5, 2014 PEOB.

35.   Thus, Aetna confirmed in the February 5, 2014 PEOB that, in processing the claims Dr. Mayer submitted on behalf of Patient A to the BOA Aetna Plan: (a) the treatments he provided were Covered Services; and (b) the benefits identified were due and owing by the BOA Aetna Plan. However, the February 5, 2014 PEOB then indicated that the amount "payable" or "issued" to Dr. Mayer for that claim was not actually being paid – the payment was unilaterally withheld by Aetna to satisfy a totally separate debt that Aetna unilaterally asserted was owed by Dr. Mayer arising from an alleged prior overpayment made by a *different* Aetna Plan – the UPS Aetna Plan – with respect to services Dr. Mayer provided over a year earlier to a *different* Aetna Insured.

36.   Because Dr. Mayer was not paid for the benefits he was owed for the services he provided to Patient A, however, Patient A remains liable for the $2,662.71

that was withheld. Aetna cannot expunge Patient A's liability to Dr. Mayer by using the benefits owed by the BOA Aetna Plan to pay off a purported overpayment made by the UPS Aetna Plan.

**Lutz Surgical Partners PLLC**

37.   As a matter of course, Lutz's patients who are Aetna Insureds (including but not limited to those insureds/patients whose claims were offset as described below) sign a form prior to receiving any medical treatment from Lutz that assigns those patients' insurance benefits, and corresponding ERISA rights, to Lutz.

38.   Seventeen of the Aetna Insureds whose claims were offset as described below signed a form which states, under a section entitled "Physician Insurance Assignment," that the insured patient "hereby authorizes payment directly to" Lutz of any "surgical and/or medical benefits" that are "otherwise payable" to the insured for those services (hereinafter, the "Insurance Assignment" or "IA" form). The form further provides that the insured "guarantee[s] payment of all charges incurred" and that it is the insured's "responsibility to pay any deductible amount, coinsurance, or any other balance not paid for by [the insured's] insurance or third party within a reasonable period of time not to exceed 60 days."

39.   Five of the Aetna Insureds whose claims were offset as described below signed a form assigning their insurance benefits to Lutz and designating Lutz to serve as their Authorized Representative and to bring claims under ERISA on their behalf

(hereinafter, the "Authorized Representative I" or "AR-I" form). The AR-I form states in pertinent part the following:

Assignment of Insurance Benefits – Appointment as Legal Authorized Representative

I hereby assign all applicable health insurance benefits and all rights and obligations that I and my dependents have under my health plan to the Provider . . . and their affiliated law firms (hereinafter, "My Authorized Representatives") and I appoint them as my authorized representative with the power to:

✓ File medical claims with the health plan

✓ File appeals and grievances with the health plan

✓ Institute and [sic] necessary litigation and/or complaints against my health plan naming me as plaintiff in such lawsuits and actions if necessary

✓ Discuss or divulge any of my personal health information or that of my dependents with any third party including the health plan

\*       \*       \*

16

I am fully aware that having health insurance does not absolve me of my responsibility to ensure that my bills for professional services from Provider are paid in full.  I also understand that I am responsible for all amounts not covered by my health insurance, including co-payments, co-insurance, and deductibles.

*     *     *

ERISA Authorization

I hereby designate, authorize, and convey to My Authorized Representatives to the full extent permissible under law and under any applicable insurance policy and/or employee health care benefit plan: (1) the right and ability to act as my Authorized Representative in connection with any claim, right, or cause of action including litigation against my health plan (even to name me as a plaintiff in such action) that I may have under such insurance policy and/or benefit plan; and (2) the right and ability to act as my Authorized Representative to pursue such claim, right, or cause of action in connection with said insurance policy and/or benefit plan (including but not limited to, the right and ability to act as my Authorized Representative  with respect to a benefit plan governed by the provisions of ERISA as provided in 29 C.F.R. §2560.5031(b)(4) with respect to any healthcare expense incurred as a result of the services I

received from Provider and, to the extent permissible under the law, to claim on my behalf, such benefits, claims, or reimbursement, and any other applicable remedy, including fines.

40.   In addition, five of the Aetna Insureds whose claims were offset as described below signed a different form also assigning their insurance benefits to Lutz and designating Lutz to serve as their Authorized Representative and to bring claims under ERISA on their behalf (hereinafter, the "Authorized Representative II" or "AR-II" form). The AR-II form states:

## Authorized Representative Designation

I hereby designate, authorize, and convey to Lutz Surgical Partners to the full extent permissible under law and under any applicable insurance policy and/or employee health care benefit plan: (1) the right and ability to act as my Authorized Representative in connection with any claim, right, or cause in action that I may have under such insurance policy and/or benefit plan, including but not limited to with respect to internal appeals or litigation; and (2) the right and ability to act as my Authorized Representative to pursue such claim, right, or cause of action in connection with said insurance policy and/or benefit plan (including but not limited to, the right and ability to act as my Authorized Representative with respect to a benefit plan governed by the provisions

of the Employee Retirement Income Security Act of 1974 ("ERISA"), as provided in 29 C.F.R. §2560.5031(b)(4)), with respect to any healthcare expense incurred as a result of the services I received from Lutz Surgical Partners and, to the extent permissible under the law, to claim on my behalf, such benefits, claims, or reimbursement, and any other applicable remedy, including fines or injunctive relief. Through this form, I am assigning to Lutz Surgical Partners all legal rights, claims or remedies I may have under ERISA or otherwise with respect to my health insurance policy relating to the health care services I have received from Lutz Surgical Partners, including any claims for benefits, for breach of fiduciary duty or other claims available under law against my insurer or claims administrator. By signing this form, I understand that Lutz Surgical Partners is not assuming any obligation or duty to assert such rights and I agree to release any claim I might have relating to Lutz Surgical Partners' exercise of such rights or the decision not to exercise such rights.

41.   In recent years, Lutz has received a number of PEOBs from Aetna in which Aetna confirms that Lutz is entitled to thousands of dollars of benefit payments pursuant to ERISA Aetna Plans. Aetna then explains that some or all of these amounts owed were not being paid because Lutz purportedly owes different Aetna Plans for

prior overpayments Aetna made for claims filed by Lutz on behalf of different Aetna Insureds.

42.   For example, on or about January 28, 2014, Aetna sent to Lutz a PEOB (the "January 28, 2014 PEOB") which reflected claims for benefits for services provided by Lutz to Patient C on October 10, 2013. The January 28, 2014 PEOB was addressed from an Aetna location in Lexington, Kentucky. A copy of the January 28, 2014 PEOB is attached hereto as Exhibit B.

43.   Patient C was insured by Operation PAR, Inc., an ERISA governed plan, and executed Lutz's Insurance Assignment form.

44.   The January 28, 2014 PEOB stated that the total amount "payable" to Lutz for services provided to Patient C was $24,700.00. The PEOB also stated, however, that these benefits were being "deducted" to recover purported overpayments made to two different patients who were insured by Nordstrom, Inc. and Salesforce.com, respectively.

45.   Aetna confirmed in the January 28, 2014 PEOB that, in processing Patient C's claims: (a) the treatments Lutz provided were Covered Services; and (b) the benefits identified were due and owing by the Operation PAR, Inc. plan. However, the January 28, 2014 PEOB indicated that the amount "paid" or "payable" to Lutz for those claims was not actually being paid – the payment was unilaterally withheld by Aetna to satisfy a totally separate debt that Aetna unilaterally asserted was owed by

Lutz arising from alleged prior overpayments made by two different Aetna Plans with respect to services Lutz provided to two different Aetna Insureds in May 2012 and March 2013, respectively.

46.   In another example, on or about June 7, 2014, Aetna sent to Lutz a PEOB (the "June 7, 2014 PEOB") which reflected claims for benefits for services provided by Lutz to Patient D on March 27, 2014. The June 7, 2014 PEOB was addressed from an Aetna location in Lexington, Kentucky. A copy of the June 7, 2014 PEOB is attached hereto as Exhibit C.

47.   Patient D was insured through LSG, an ERISA governed plan, and executed Lutz's Authorized Representative I form.

48.   The June 7, 2014 PEOB stated that the total amount "payable" to Lutz for services provided to Patient D was $3,881.00. The June 7, 2014 PEOB also stated, however, that these benefits were being "deducted" to recover purported overpayments made to a different patient who was insured by the Sandy Alexander plan.

49.   As in the prior example, Aetna confirmed in the June 7, 2014 PEOB that, in processing Patient D's claims: (a) the treatments Lutz provided were Covered Services; and (b) the benefits identified were due and owing by the LSG plan. However, the June 7, 2014 PEOB indicated that the amount "paid" or "payable" to Lutz for those claims was not actually being paid – the payment was unilaterally

withheld by Aetna to satisfy a totally separate debt that Aetna unilaterally asserted was owed by Lutz arising from alleged prior overpayments made by a different Aetna Plan with respect to services Lutz provided to a different Aetna Insured in July 2012.

50.   As an ONET provider, Lutz has never entered into an agreement with Aetna that permits Aetna to offset benefits payable to it by one Aetna Plan for Covered Services provided to one of its Aetna Insureds in order to recover amounts Aetna believes a different Aetna Plan erroneously paid to Lutz for services rendered to a different Aetna Insured. Because Lutz never received payment for the Covered Services it provided to Patients C or D, Patients C and D remain liable to Lutz for the unpaid amount of Lutz's bill.

51.   As with Dr. Mayer, in addition to the PEOBs that Aetna sent to Lutz, Aetna also sent an EOB to Patients C and D, in which Aetna falsely reported that Lutz has been paid in full, when, in fact, Lutz had been paid nothing for the services it had provided.

52.   The January 28 and June 7, 2014 PEOBs are typical of other PEOBs that Lutz has received, which reflect that Aetna has refused to pay benefits otherwise due and owing to Lutz for Covered Services provided to Aetna Insureds who were insured by Aetna Plans governed by ERISA. Like the January 28 and June 7, 2014 PEOBs, these other PEOBs explain that Aetna unilaterally offset these benefit payments

against alleged prior overpayments to Lutz for services provided to different Aetna Insureds insured by different Aetna Plans.

53.   The following chart summarizes Aetna offsets from Lutz's patients, all of whom executed either the Insurance Assignment or Authorized Representative forms:

| Date of PEOB | Plans that Purportedly Overpaid | Date of Service Offset | Patient Offset | ERISA Plan Offset | Amount Owed | Amount Offset | Form |
|---|---|---|---|---|---|---|---|
| 3/1/2013 | Amylin Pharma-ceuticals | 11/23/2012 | Patient E | Exhale Enterprises Inc. | $156.42 | $156.42 | IA |
| | | | | TOTAL: | $156.42 | $156.42 | |
| 4/23/2013 | NY Life Ins Co | 1/18/2013 | Patient F | Quest Diagnostics Inc. | $1,890.00 | $1,890.00 | IA |
| | | 1/19/2013 | Patient F | Quest Diagnostics Inc. | $980.00 | $980.00 | IA |
| | | | | TOTAL: | $2,870.00 | $2,870.00 | |
| 12/11/2013 | Reckitt Benckiser, Inc.; United Air | 9/18/2013 | Patient G | Regis Corp. | $284.67 | $284.67 | IA |
| | | 11/8/2013 | Patient H | Bank of America Corp. | $9.00 | $9.00 | AR-II |

| Date of PEOB | Plans that Purportedly Overpaid | Date of Service Offset | Patient Offset | ERISA Plan Offset | Amount Owed | Amount Offset | Form |
|---|---|---|---|---|---|---|---|
| | | 11/15/2013 | Patient I | Bank of America Corp. | $9.00 | $9.00 | AR-II |
| | | | | TOTAL: | $302.67 | $302.67 | |
| 12/16/2013 | Reckitt Benckiser, Inc. | 11/2/2012 | Patient X | Progressive Casualty Ins. Co. | $74,498.40 | $1,305.53 | IA |
| | | | | TOTAL: | $74,498.40 | $1,305.53 | |
| 5/12/2014 | The Cheesecake Factory | 12/20/2013 | Patient I | Bank of America Corp. | $54.60 | $54.60 | AR-II |
| | | | | TOTAL: | $54.60 | $54.60 | |
| 6/2/2014 | Teco Energy | 8/20/2013 | Patient J | Northwest-ern Medicine | $218.88 | $218.88 | IA |
| | | 8/21/2013 | Patient J | Northwest-ern Medicine | $1,287.25 | $1,287.25 | IA |
| | | | | TOTAL: | $1,506.13 | $1,506.13 | |
| 6/3/2014 | Teco Energy | 10/3/2013 | Patient K | Sunbelt Beverage Company, LLC | $471.00 | $471.00 | IA |

| Date of PEOB | Plans that Purportedly Overpaid | Date of Service Offset | Patient Offset | ERISA Plan Offset | Amount Owed | Amount Offset | Form |
|---|---|---|---|---|---|---|---|
| | | 10/4/2013 | Patient K | Sunbelt Beverage Company, LLC | $141.00 | $141.00 | IA |
| | | 10/5/2013 | Patient K | Sunbelt Beverage Company, LLC | $141.00 | $141.00 | IA |
| | | | | TOTAL: | $753.00 | $753.00 | |
| 6/4/2014 | Sandy Alexander | 12/18/2013 | Patient L | Micross Premier Semiconductor LLC | $158.18 | $158.18 | IA |
| | | | | TOTAL: | $158.18 | $158.18 | |
| 8/12/2014 | Clark Construction | 12/7/2013 | Patient M | Aetna Inc. | $37,774.21 | $14,294.50 | IA |
| | | | | TOTAL: | $37,774.21 | $14,294.50 | |
| 8/15/2014 | Home Depot | 4/5/2014 | Patient N | H. Lee Moffitt Cancer Center & Research Institute | $138.89 | $138.89 | AR-I |
| | | | | TOTAL: | $138.89 | $138.89 | |

| Date of PEOB | Plans that Purportedly Overpaid | Date of Service Offset | Patient Offset | ERISA Plan Offset | Amount Owed | Amount Offset | Form |
|---|---|---|---|---|---|---|---|
| 8/19/2014 | Home Depot | 8/21/2013 | Patient J | Northwestern Medicine | $262.08 | $262.08 | IA |
| | | 5/28/2014 | Patient O | United Airlines | $200.83 | $200.83 | AR-I |
| | | | | TOTAL: | $462.91 | $462.91 | |

54.    The chart below summarizes additional Aetna offsets from Lutz's patients where the PEOBs did not identify the specific amount that was being offset from each claim, but instead simply offset a lump sum from a total amount owed to Lutz in response to a collection of claims by different patients insured by different plans. This chart identifies the *pro rata* portion of these offsets that are attributable to Lutz's patients who executed the Insurance Assignment or Authorized Representative forms:

| Date of PEOB | Plans that Purportedly Overpaid | Date of Service Offset | Patient Offset | ERISA Plan Offset | Amount Owed | Amount Offset | Form |
|---|---|---|---|---|---|---|---|
| 4/3/2013 | Vangent, Inc. | 1/4/2013 | Patient P | Teco Energy, Inc. | $3,954.80 | $1,429.19 | IA |
| | | 1/17/2013 | Patient F | Quest Diagnostics Inc. | $908.00 | $328.13 | IA |
| | | | | TOTAL: | $4,862.80 | $1,757.32 | |

| Date of PEOB | Plans that Purportedly Overpaid | Date of Service Offset | Patient Offset | ERISA Plan Offset | Amount Owed | Amount Offset | Form |
|---|---|---|---|---|---|---|---|
| 6/3/2013 | Dept of Defense | 5/1/2013 | Patient H | Bank of America Corp. | $1,134.00 | $45.15 | AR-II |
| | | | | TOTAL: | $1,134.00 | $45.15 | |
| 7/10/2013 | United Air | 4/2/2013 | Patient Q | Ferman Automotive Management Services | $186.00 | $21.53 | IA |
| | | 4/3/2013 | Patient Q | Ferman Automotive Management Services | $1,007.00 | $116.58 | IA |
| | | 4/29/2013 | Patient R | Lockheed Martin Corp. | $4,064.50 | $470.54 | IA |
| | | 4/29/2013 | Patient R | Lockheed Martin Corp. | $392.80 | $45.47 | IA |
| | | 5/21/2013 | Patient S | The Chenega Corporation Employee Benefits Trust | $2,047.50 | $237.04 | AR-II |
| | | 6/12/2013 | Patient T | VMware, Inc. | $1,323.00 | $153.16 | AR-II |
| | | | | TOTAL: | $9,020.80 | $1,044.32 | |

| Date of PEOB | Plans that Purportedly Overpaid | Date of Service Offset | Patient Offset | ERISA Plan Offset | Amount Owed | Amount Offset | Form |
|---|---|---|---|---|---|---|---|
| 8/7/2013 | Renal Hyperten-sion Ctr | 5/12/2013 | Patient U | Schaer Development of Central FL Inc. | $387.08 | $70.77 | IA |
| | | 5/13/2013 | Patient U | Schaer Development of Central FL Inc. | $2,227.93 | $407.35 | IA |
| | | 5/22/2013 | Patient V | Southeast Hospitality Holdings LLC | $387.08 | $70.77 | IA |
| | | 5/23/2013 | Patient V | Southeast Hospitality Holdings LLC | $169.57 | $31.00 | IA |
| | | 5/24/2013 | Patient V | Southeast Hospitality Holdings LLC | $2,372.45 | $433.77 | IA |
| | | 6/21/2013 | Patient W | ACF Consulting, Inc. | $254.98 | $46.62 | AR-II |
| | | 7/19/2013 | Patient W | ACF Consulting, Inc. | $1.57 | $0.29 | AR-II |
| | | | | TOTAL: | $5,800.66 | $1,060.57 | |
| 1/29/2014 | Nordstrom, Inc. | 10/9/2013 | Patient Y | RTG Furniture Corp. & Affiliates DBA Rooms To Go | $527.20 | $74.57 | IA |

| Date of PEOB | Plans that Purportedly Overpaid | Date of Service Offset | Patient Offset | ERISA Plan Offset | Amount Owed | Amount Offset | Form |
|---|---|---|---|---|---|---|---|
| | | 10/23/2013 | Patient Z | H. Lee Moffitt Cancer Center & Research Institute | $3,029.76 | $428.57 | IA |
| | | 10/25/2013 | Patient AA | TECO Services Inc. | $139.45 | $19.73 | IA |
| | | | | TOTAL: | $3,696.41 | $522.87 | |
| 4/30/2014 | United Air | 2/9/2014 | Patient K | Sunbelt Beverage Company, LLC | $431.00 | $135.18 | IA |
| | | 2/10/2014 | Patient K | Sunbelt Beverage Company, LLC | $141.00 | $44.22 | IA |
| | | 2/11/2014 | Patient K | Sunbelt Beverage Company, LLC | $141.00 | $44.22 | IA |
| | | 2/12/2014 | Patient K | Sunbelt Beverage Company, LLC | $141.00 | $44.22 | IA |
| | | | | TOTAL: | $854.00 | $267.84 | |

| Date of PEOB | Plans that Purportedly Overpaid | Date of Service Offset | Patient Offset | ERISA Plan Offset | Amount Owed | Amount Offset | Form |
|---|---|---|---|---|---|---|---|
| 10/8/2014 | Thomson Reuters | 3/29/2014 | Patient BB | H. Lee Moffitt Cancer Center & Research Institute | $38,241.88 | $2,643.64 | AR-I |
| | | 5/28/2014 | Patient CC | H. Lee Moffitt Cancer Center & Research Institute | $22,714.59 | $1,570.25 | AR-I |
| | | | | TOTAL: | $60,956.47 | $4,213.89 | |

55.   In each of these examples, (1) Aetna processed the claim submitted by Lutz; (2) calculated the specific amount of benefits that were owed to Lutz under the terms of the applicable Aetna Plan; (3) falsely reported in the EOB submitted to the patient that the calculated benefits were in fact paid to Lutz; and (4) failed to pay such benefits because of its unilateral determination that at some point in the past Aetna had purportedly overpaid benefits to Lutz on behalf of different Aetna Plans for services provided to different Aetna Insureds.

56.   Because Lutz never received payment for the Covered Services it provided to the Aetna Insureds whose claims were offset by Aetna to recover alleged prior unrelated overpayments, and pursuant to the terms of the Aetna Plans that insure

those patients and the agreements they executed with Lutz, those Aetna Insureds remain liable to Lutz for the unpaid amount of Lutz's bill.

**NYC Corrective Chiropractic Care P.C.**

57.   Like Dr. Mayer and Lutz, NYC Chiro has received PEOBs from Aetna in which Aetna confirms that NYC Chiro is entitled to benefit payments pursuant to ERISA Aetna Plans. Aetna then explains that some or all of these amounts owed were not being paid because NYC Chiro purportedly owes different Aetna Plans for prior overpayments Aetna made for claims filed by NYC Chiro on behalf of different Aetna Insureds.

58.   For example, on or about October 4, 2014, Aetna sent to NYC Chiro a PEOB (the "October 4, 2014 PEOB") which reflected claims for benefits for services provided by NYC Chiro to Patient DD on September 3 and September 15, 2014. The October 4, 2014 PEOB was addressed from an Aetna location in El Paso, Texas. A copy of the October 4, 2014 PEOB is attached hereto as Exhibit D.

59.   Patient DD was insured by Marsh & McLennan Companies, Inc., an ERISA governed plan.

60.   Patient DD signed an "Assignment of Benefits/ERISA Authorized Representative Form" assigning her insurance benefits to NYC Chiro and designating NYC Chiro to serve as her Authorized Representative and to bring claims under ERISA on her behalf. The form states in pertinent part as follows:

**<u>ERISA Authorization</u>**

I [Patient DD] hereby designate and authorize, my provider, Dr. Ali D. Morse, D.C. of NYC Corrective Chiropractic Care, P.C. the full extent permissible under law and under any applicable insurance policy and/or employee health care benefit plan, as my Authorized Representative: (1) the right and ability to act on my behalf in connection with any claim, right, or cause in action that I may have under such insurance policy and/or benefit plan, (2) the right and ability to act on my behalf to pursue such claim, right, or cause of action in connection with said insurance policy and/or benefit plan (including but not limited to, the right to act on my behalf in respect to a benefit plan governed by the provisions of ERISA as provided in 29 C.F.R. §2560.5031(b)(4). This with respect to any healthcare expense incurred, as a result of the services I received from my provider, to the extent permissible under the law, to claim on my behalf, such benefits, claims, or reimbursement, and any other applicable remedy, including fines.

*       *       *

### __Assignment of Insurance Benefits__

I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitled to my Provider, Dr. Ali D. Morse, D.C. of NYC Corrective Chiropractic Care. . . .

I hereby authorize Dr. Ali D. Morse, D.C. of NYC Corrective Chiropractic Care to submit claims, on my or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Dr. Ali D. Morse, D.C. I also hereby instruct my benefit plan (or its administrator) to pay Dr. Ali D. Morse, D.C. directly for services rendered to me or my dependents. To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and my provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make the check to me and mail it directly to Provider.

I am fully aware that having health insurance does not absolve me of my responsibility to ensure that my bills for professional services from my provider are paid in full. I also understand that I am responsible for all

amounts not covered by my health insurance, including co-payments, co-insurance, and deductibles.

**Financial Responsibility**

I have requested professional services from Dr. Ali D. Morse, D.C. (NYC Corrective Chiropractic Care) on behalf of myself and/or my dependents, and understand that by making this request, I am responsible for all charges incurred during the course of said services. I understand that all fees for said services are due and payable on the date services are rendered and agree to pay all such charges incurred in full immediately upon presentation of the appropriate statement unless other arrangements have been made in advance.

61.    The October 4, 2014 PEOB stated that the total amount "payable" to NYC Chiro for services provided to Patient DD was $423.00. The October 4, 2014 PEOB also stated, however, that these benefits were being "deducted" to recover purported overpayments made to a different patient who was insured by an individual Aetna plan.

62.    Aetna confirmed in the October 4, 2014 PEOB that, in processing Patient DD's claims: (a) the treatments NYC Chiro provided were Covered Services; and (b) the benefits identified were due and owing by the Marsh & McLennan Companies, Inc. plan. However, the October 4, 2014 PEOB indicated that the amount "paid" or

"payable" to NYC Chiro for those claims was not actually being paid – the payment was unilaterally withheld by Aetna to satisfy a totally separate debt that Aetna unilaterally asserted was owed by NYC Chiro arising from alleged prior overpayments made by a different Aetna Plan with respect to services NYC Chiro provided to a different Aetna Insured in May 2014.

63.   As an ONET provider, NYC Chiro has never entered into an agreement with Aetna that permits Aetna to offset benefits payable to it by one Aetna Plan for Covered Services provided to one of its Aetna Insureds in order to recover amounts Aetna believes a different Aetna Plan erroneously paid to NYC Chiro for services rendered to a different Aetna Insured. Because NYC Chiro never received payment for the Covered Services it provided to Patient DD, Patient DD remains liable to NYC Chiro for the unpaid amount of NYC Chiro's bill.

64.   As with Dr. Mayer and Lutz, in addition to the PEOBs that Aetna sent to NYC Chiro, Aetna also sent an EOB to Patient DD, in which Aetna falsely reported that NYC Chiro has been paid in full, when, in fact, NYC Chiro had been paid nothing for the services it had provided.

65.   The October 4, 2014 PEOB is typical of other PEOBs that NYC Chiro has received, which reflect that Aetna has refused to pay benefits otherwise due and owing to NYC Chiro for Covered Services provided to Aetna Insureds who were insured by Aetna Plans governed by ERISA. Like the October 4, 2014 PEOB, these other PEOBs

explain that Aetna unilaterally offset these benefit payments against alleged prior overpayments to NYC Chiro for services provided to different Aetna Insureds insured by different Aetna Plans.

66.   In this example, (1) Aetna processed the claim submitted by NYC Chiro; (2) calculated the specific amount of benefits that were owed to NYC Chiro under the terms of the applicable Aetna Plan; (3) falsely reported in the EOB submitted to the patient that the calculated benefits were in fact paid to NYC Chiro; and (4) failed to pay such benefits because of its unilateral determination that at some point in the past Aetna had purportedly overpaid benefits to NYC Chiro on behalf of a different Aetna Plan for services provided to a different Aetna Insured.

67.   Because NYC Chiro never received payment for the Covered Services it provided to the Aetna Insureds whose claims were offset by Aetna to recover alleged prior unrelated overpayments, and pursuant to the terms of the Aetna Plans that insure those patients and the agreements they executed with NYC Chiro, those Aetna Insureds remain liable to NYC Chiro for the unpaid amount of NYC Chiro's bill.

**Aetna's ERISA Violations**

68.   At all relevant times, and with specific respect to Aetna's acts alleged herein, the Aetna Plans delegated all claims administration duties to Aetna and Aetna therefore served as an ERISA fiduciary. In particular, Aetna was responsible for interpreting and applying plan terms, making coverage and benefit decisions,

complying with ERISA's notice and appeal requirements set forth in 29 C.F.R §
2560.503-1 ("ERISA Claims Procedure"), and effectuating benefit payments, whether
from its own assets (in the case of fully-insured plans) or the assets of the plan itself
(in the case of self-insured plans).

69.    As an ERISA fiduciary, Aetna must discharge its duties with respect to the
Aetna Plans "solely in the interest of the participants and beneficiaries" and "for the
exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29
U.S.C. § 1104(a)(1). This means, among other things, that Aetna must administer the
Aetna Plans "in accordance with the documents and instruments governing the plan
insofar as such documents and instruments are consistent with [ERISA]." *Id.* By
refusing to pay benefits to Plaintiffs for services provided to their Aetna Insured
patients, and thereby imposing the liability for the unpaid bill on the Aetna Insureds,
Aetna has violated this obligation.

70.    No Aetna Plan permits it or its claims administrator to deny or reduce
benefits for one Aetna Insured in order to recover overpayments that a different Aetna
Plan purportedly made with respect to claims submitted on behalf of a different Aetna
Insured. Aetna's unilateral offsets therefore violate the terms of the Aetna Plans and
its fiduciary duties. The terms of the plans require the plan actually to pay benefits for
Covered Services; they do not provide that this obligation may be satisfied through a
unilateral "recovery" that effectively takes benefits owed by one Aetna Plan for

Covered Services provided to one of its Aetna Insureds and uses those benefits to offset an alleged and disputed overpayment that Aetna alleges that it caused a different Aetna Plan to make for services provided to a different Aetna Insured.

71.   Even if Aetna had caused an Aetna Plan to overpay Plaintiffs at some point in the past, recovering such overpayment by unilaterally refusing to pay a new and unrelated claim relating to a different Aetna Insured and a different Aetna Plan is not permitted under ERISA. Instead of availing itself of lawful means of recovering such overpayments under ERISA, Aetna instead engages in illegal self-help designed to circumvent the ERISA regulatory regime. Neither the Aetna Insureds, their ONET providers, nor the language of the Aetna Plans granted Aetna the right to recover alleged overpayments in this manner.

72.   Additionally, all Aetna Plans provide that Aetna Insureds remain liable for any billed amounts that the plan refuses to pay ONET providers such as Plaintiffs. Thus, Aetna's misconduct has also imposed financial liability on Plaintiffs' Aetna Insured patients for treatment that Aetna acknowledges to be a Covered Service.

73.   In addition to violating the terms of the Aetna Plans, Aetna also breached its fiduciary duty to comply with the minimum requirements for "full and fair review" of claims under ERISA and the regulations promulgated thereunder. Aetna's failure to actually send checks to Plaintiffs in the amounts owed under Aetna Plans governed by ERISA constituted an "adverse benefit determination" under ERISA that obligated

Aetna (as the plans' claims administrator) to provide the notice and appeal rights. Aetna ignored this legal requirement.

74.   The definition of "adverse benefit determination" included in the ERISA Claims Procedure includes not only "a denial, reduction, or termination of" benefits, but also a "failure to provide or make payment (in whole or in part) for" a benefit. 29 C.F.R. § 2560.503-1(m)(4).   Aetna's offsets, therefore, constitute adverse benefit determinations. Aetna, however, failed to treat its unilateral decision to withhold payment as an adverse benefit determination, and did not provide ***any*** of the informational items or appellate procedures mandated by the ERISA Claims Procedure. For example, in the EOBs and PEOBs that Aetna sent concerning offset claims, it failed to:

    (a)    set forth the specific reason or reasons for the refusal to pay the covered benefits, 29 C.F.R § 2560.503-1(g)(1)(i);

    (b)    identify the "plan provision" that supported its refusal to actually pay the covered benefits, 29 C.F.R § 2560.503-1(g)(1)(ii);

    (c)    describe any additional material or information necessary for the Aetna Insured or Plaintiff to receive the benefit, 29 C.F.R § 2560.503-1(g)(1)(iii);

    (d)    describe the applicable plan review procedures and time limits applicable thereto, 29 C.F.R § 2560.503-1(g)(1)(iv);

(e)   advise the recipient of the right to bring a civil action under section 502(a) of ERISA following the adverse benefit determination on review, 29 C.F.R. § 2560.503-1(g)(1)(iv);

(f)   identify the rule or protocol that it relied upon or state that the rule or protocol would be provided upon request, 29 C.F.R. § 2560.503-1(g)(1)(v)(A); and

(g)   did not provide *any* appeal rights – much less the type of rights set forth in the ERISA regulations, 29 C.F.R. § 2560.503-1(h).

75.   Not only did Aetna fail to comply with ERISA's notice and appeal requirements, it could not possibly have done so when effectuating the illegal offsets challenged herein because, among other things, there is no "plan provision" that supported Aetna's refusal to actually pay the covered benefits, as required under 29 C.F.R § 2560.503-1(g)(1)(ii), because no Aetna Plan contains such a provision.

76.   Because Aetna failed to comply with the ERISA Claims Procedure, any administrative remedies are "deemed" exhausted pursuant to 29 C.F.R § 2560.503-1(*l*). Exhaustion is also excused because it would be futile to pursue administrative remedies, as Aetna does not acknowledge that offsets constitute adverse benefit decisions at all, and thus offers no meaningful administrative process for challenging such offsets.

## CLASS ACTION ALLEGATIONS

77.   Plaintiffs' claims are properly maintained as a class action pursuant to Fed. R. Civ. P. 23, including under subsections (a)(1-4), (b)(1)(A-B), (b)(2), and (b)(3).

78.   Plaintiffs bring their claims on behalf of a class (the "Class") defined as:

All persons who sought a health insurance benefit payment from an Aetna health insurance plan governed by ERISA, for covered services rendered by an ONET provider, but Aetna withheld such benefit payment in order to recover a prior alleged overpayment made to the same ONET provider for covered services rendered to a different patient insured.

79.   The members of the Class are so numerous that joinder of all members is impractical. While the precise number of members in the Class is known only to Aetna, upon information and belief, the Class consists of thousands of people.

80.   Common questions of law and fact that can be resolved with common answers exist as to all Class members and predominate over any questions affecting individual Class members. Such common questions include:

(1)   Whether Aetna's offsets constitute a breach of the Aetna Plans;

(2)   Whether Aetna's offsets are permitted pursuant to a unilateral right of setoff or recoupment under ERISA;

(3)     Whether     Aetna's     offsets     constitute     "adverse     benefit determinations" under ERISA;

(4)     Whether Aetna violated ERISA's notice and appeal requirements in connection with such offsets or otherwise provided an ERISA "full and fair review" of the claims that were not paid in order to effectuate such offsets;

(5)     Whether Aetna's standardized offset-related conduct establishes "deemed" exhaustion of administrative remedies;

(6)     Whether Aetna's standardized offset-related conduct establishes the futility of exhausting administrative remedies;

(7)     Whether Class members may recover unpaid benefits from Aetna and, if so, the amounts they should receive;

(8)     Whether, in addition to unpaid benefits, interest should be added to the payment of unpaid benefits under ERISA; and

(9)     Whether Plaintiffs are entitled to prospective relief enjoining Aetna's offset practices.

81.     Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs are each either members of the class pursuant to assignments they have received from their Aetna Insured patients or as authorized representatives of such patients; there is no provision in any Aetna Plan that allows Aetna to withhold benefit payments otherwise due and owing with respect to services rendered to one Aetna Insured in

order to recover overpayments purportedly made by a different Aetna Plan with respect to a different Aetna Insured; and Aetna submits EOBs to all Aetna Insureds whose benefit payments have been offset against purported overpayments to their ONET providers which falsely report that the benefits have been paid to the providers.

82. Plaintiffs will fairly and adequately protect the interests of the members of the Class, are committed to the vigorous prosecution of this action, have retained counsel competent and experienced in class action litigation and the prosecution of ERISA claims and have no interests antagonistic to, or in conflict with, those of the Class.

83. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for Aetna.

84. By routinely withholding benefits owed on account of one Aetna Insured to satisfy purported overpayments on the account of another, Aetna has acted and refused to act on grounds that apply generally to the Class.

85. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class is impracticable. Further, because the unpaid benefits denied Class members may be small relative to the expense and burden of individual litigation, it would be impossible for the Class members to individually redress the harm done to them.

Adjudication of individual Class members' claims with respect to Aetna would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other Class members to protect their interests.

86.   A class action will present far fewer management difficulties than individualized litigation because it provides a single adjudication and comprehensive supervision by a single court on the issue of Aetna's liability. Plaintiffs do not currently foresee any difficulties in managing a class action.

87.   Aetna maintains claims databases that record when and how they offset benefit payments in order to recover purported overpayments. Accordingly, the members of the Class can be readily and objectively ascertained through use of records maintained by Aetna.   Based on this information, Plaintiffs contemplate providing many members of the Class with individual notice to the extent possible after reasonable effort, except where such individual notice is not required by law [e.g., under Fed. R. Civ. P. 23(b)(1) or (2)].

## FIRST CAUSE OF ACTION

## CLAIM FOR BENEFITS DUE
### (on behalf of Plaintiffs and the Class against Aetna)

88.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

89.   The First Cause of Action is brought under 29 U.S.C. § 1132(a)(1)(B).

90.   Aetna systematically violates (and violated) the terms of the Aetna Plans and ERISA by failing to cause those plans to pay benefits for Covered Services despite having calculated and determined the benefits that were due and owing under the Aetna Plans for the services at issue.

91.   Aetna should be required to pay all such benefits and prevented from engaging in these practices in the future.

## SECOND CAUSE OF ACTION

## CLAIM FOR INJUNCTIVE AND DECLARATORY RELIEF
**(on behalf of Plaintiffs and the Class against Aetna)**

92.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

93.   The Second Cause of Action is brought under 29 U.S.C. § 1132(a)(3).

94.   Aetna systematically violates (and violated) the terms of the Aetna Plans and ERISA by failing to cause those plans to pay benefits for Covered Services in order to offset alleged overpayments that Aetna caused those plans to make on claims submitted with respect to different Aetna Insureds.

95.   Aetna should be enjoined from continuing to engage in this illegal conduct and ordered to provide Plaintiffs and members of the Class with other appropriate equitable relief, including disgorgement of profits.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment in their favor against Aetna as follows:

A.     Certifying the Class and appointing Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

B.     Declaring that Aetna's obligation to cause the Aetna Plans to pay benefits for Covered Services rendered by an ONET provider to an insured of that plan is not satisfied where Aetna withholds such payment in order to recover purported overpayments that it caused Aetna Plans to make for services rendered to a different Aetna Insured;

C.     Ordering Aetna to make payment, with interest, of benefits offset under these circumstances;

D.     Ordering Aetna to disgorge the profits it earned by failing to pay offset benefits under these circumstances;

E.     Permanently enjoining Aetna from offsetting benefits under these circumstances;

F.     Awarding Plaintiffs disbursements and expenses of this action, including reasonable attorneys' fees, in amounts to be determined by the Court; and

G.     Granting such other and further relief as is just and proper.

Dated:  October 24, 2014                    GRODSKY & OLECKI LLP

                                            By  _/s/ Michael J. Olecki_____
                                            Michael J. Olecki
                                            Tim B. Henderson
                                            2001 Wilshire Boulevard
                                            Suite 210
                                            Santa Monica, CA 90403
                                            310.315.3009
                                            310.315.1557 (fax)
                                            *michael@grodsky-olecki.com*
                                            *tim@grodsky-olecki.com*

                                            D. Brian Hufford (*pro hac vice forthcoming*)
                                            Jason S. Cowart (*pro hac vice forthcoming*)
                                            ZUCKERMAN SPAEDER LLP
                                            1185 Avenue of the Americas
                                            31st Floor
                                            New York, NY  10036
                                            212.704.9600
                                            212.704.4256 (fax)
                                            *dbhufford@zuckerman.com*
                                            *jcowart@zuckerman.com*

                                            William K. Meyer (*pro hac vice forthcoming*)
                                            ZUCKERMAN SPAEDER LLP
                                            100 East Pratt Street
                                            Suite 2440
                                            Baltimore MD 21202
                                            410.332.0444
                                            410.659.0436 (fax)
                                            *wmeyer@zuckerman.com*

                                            Anthony F. Maul (*pro hac vice forthcoming*)
                                            THE MAUL FIRM, P.C.
                                            68 Jay Street
                                            Suite 201
                                            Brooklyn, NY 11201
                                            646.263.5780
                                            866.488.7936 (fax)
                                            *afmaul@maulfirm.com*

Vincent N. Buttaci (*pro hac vice forthcoming*)
John W. Leardi (*pro hac vice forthcoming*)
Paul D. Werner (*pro hac vice forthcoming*)
BUTTACI & LEARDI, LLC
103 Carnegie Center
Suite 323
Princeton, NJ 08540
609.799.5150
609.799.5180 (fax)
*vnbuttaci@buttacilaw.com*
*jwleardi@buttacilaw.com*
*pdwerner@buttacilaw.com*

*Counsel for Plaintiffs and the Putative Class*